**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff,**

v.

**CEI FLORIDA, INC., CEI Industries, Inc., CEI Midwest, Inc., CEI Southwest, Inc., CEI West Roofing Company, Inc., George J. Cook, John C. Cook, and David C. Rider, jointly and severally, Defendants/Third Party Plaintiffs,**

v.

**Richard D. FERGUSON and Stirling, Ferguson & Valenti, Third Party Defendants.**

No. 92–CV–73303–DT.

United States District Court,
E.D. Michigan, S.D.

Nov. 24, 1993.

Hans H.J. Pijls, Detroit, MI, for plaintiff.

John Griffin, Birmingham, MI, David De-lie, and Ronald Deneweth, Troy, MI, for defendants.

**OPINION AND ORDER REGARDING SANCTIONS FOR VIOLATION OF LOCAL RULE 16.1 AND PRETRIAL ORDER**

ROSEN, District Judge.

## I. INTRODUCTION

This matter is before the Court on its own notice to Plaintiff to show cause as to whether it violated the Local Court Rules for the Eastern District of Michigan and this Court's own pretrial order.

## II. FACTUAL BACKGROUND

On October 21, 1993, this Court conducted a hearing on cross motions for summary judgment filed by all three sets of parties. At the end of the hearing, the Court granted summary judgment in the approximate amount of $1,000,000 to Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") against the Defendant CEI Corporations, jointly and severally, for premiums due on a workers compensation policy. The Court also struck down as a fraudulent conveyance the transfer of CEI West Roofing Company stock from CEI Industries to Individual Defendants George Cook, John Cook and David Rider. Finally, the Court denied summary judgment to Third Party Defendants, Stirling, Ferguson & Valenti and Richard Ferguson, finding that a material issue of fact existed as to whether Third Party Defendants violated a duty of care by not informing Defendants of a joint and several liability provision in the workers compensation policy.

No motion had been filed by any party with respect to claims for premiums arising out of a second policy issued by St. Paul, the value of which is approximately $70,000. However, the evidence of record at the summary judgment hearing indicated that only one of the Defendant Corporations, CEI Industries, was liable on the second policy.

The record further indicated that CEI Industries' liabilities far exceeded its assets, and thus its ability to pay any judgment was extremely limited, if not non-existent. The Court stated at the summary judgment hearing that St. Paul's legal arguments to hold the financially healthy Defendant Corporations jointly and severally liable on this second policy were very weak and would, in all likelihood, have been dismissed summarily had the Defendants brought a dispositive motion on this issue.

At the conclusion of the hearing at 4:30 p.m., the Court invited counsel and their clients back to chambers to conduct a final pretrial conference to discuss settlement. After two hours of negotiations, the Court was informed that Plaintiff would not move from its settlement demand of $1,000,000. The Court, therefore, asked to speak with counsel and the client representative from St. Paul. Mr. Hans Pijls of Plunkett & Cooney, P.C., St. Paul's counsel, produced Mr. James Swan, the number two person in St. Paul's branch office in Troy, Michigan. In chambers, the Court specifically questioned Mr. Swan and Mr. Pijls as to whether Mr. Swan had the authority or the ability to compromise the $1,000,000 judgment St. Paul had just received. He replied that he did not. Indeed, the Court was informed that to receive any such negotiating authority, Mr. Swan would have to call the home office in Minnesota.

Believing St. Paul and Mr. Pijls to be in violation of not only its own pretrial order, which specifically provides that parties/clients are to be present in person at final pretrial settlement conferences with settlement authority, but also Local Rule 16.-1(c), this Court ordered St. Paul to show cause why it should not have judgment entered against it for these violations. In ordering this hearing, the Court reminded Mr. Swan and Mr. Pijls that its pretrial order, entered pursuant to Fed.R.Civ.P. 16, specifically provides, in capital letters, that failure to comply with the final pretrial conference requirement of having clients with settlement authority present will result in entry of judgment.

In a show cause hearing conducted by the Court on October 22, 1993, the Court set forth its basis for considering entry of judgment against St. Paul, namely, Fed.Rs.Civ.P. 16 and 37, and the pretrial order entered for this case on February 10, 1993. St. Paul protested that Mr. Swan did have meaningful settlement authority in accord with Local Court Rule 16.1. However, upon examination of Mr. Swan, the Court learned that his settlement authority was limited to the following:

(1) He could waive future back premium adjustments on the workers compensation policy; these future adjustments could amount to as much as $500,000, but, at the time of the hearing and final pretrial conference, they were completely unripened claims and their value was wholly speculative;

(2) He could waive St. Paul's premium claim on the second insurance policy it provided to Defendant Corporations—the value of which was approximately $70,000;

(3) He could waive interest on St. Paul's claims, a figure which, while estimated to be $100,000 or more, was also unripe at the time of the hearing and final pretrial conference; and

(4) Finally, he had additional settlement authority in the amount of $10,000.

After hearing argument from St. Paul, the Court took the issue of sanctions for non-compliance with the Local Rules and its own order under advisement for more than one month. The Court is now prepared to rule on this matter, and this Memorandum Opinion and Order sets forth that ruling.

### III. DISCUSSION

Fed.R.Civ.P. 16 (emphasis added) states as follows:

(a) **Pretrial Conferences; Objectives.** In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as … facilitating the settlement of the case. * * *

(c) **Subjects to be Discussed at Pretrial Conferences.** The participants at any conference under this rule may consider

and take action with respect to ... the possibility of settlement....

**(f) Sanctions.** If a party or a party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, *or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees,* unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(2) (emphasis added) states that the Court may enter:

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) *An order* striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or *dismissing the action or proceeding or any part thereof,* or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders....

These rules clearly permit the Court to enter sanctions it deems appropriate, including partial or complete dismissal of the action, for the violation of its February 10, 1993 pretrial order.

That pretrial order, issued pursuant to Fed.R.Civ.P. 16(e), clearly provides, in bold and capital letters as indicated, but with underlining added:

**THIS IS NOT A FORM ORDER. COUNSEL ARE URGED TO READ ALL PROVISIONS THOROUGHLY AS THEY WILL BE HELD TO KNOW THE RULES AND REQUIREMENTS INCLUDED THEREIN. * * ***

FINAL PRETRIAL SETTLEMENT CONFERENCE IS SCHEDULED FOR [originally, August 26, 1993, at 10:30 a.m.]. TRIAL COUNSEL MUST BE PRESENT. *CLIENTS, OR THOSE WITH AUTHORITY TO ENGAGE IN SETTLEMENT NEGOTIATIONS, SHALL ALSO BE PRESENT. THERE WILL BE NO EXCEPTIONS TO THIS REQUIREMENT OTHER THAN IN THE MOST DIRE AND EXTREME OF EMERGENCIES. ABSENT WRITTEN ORDER OF THE COURT, FAILURE OF CLIENTS, OR THOSE WITH AUTHORITY TO APPEAR AT THE FINAL PRETRIAL SETTLEMENT CONFERENCE WILL RESULT IN ENTRY OF JUDGMENT.*

This pretrial order is subject to only one interpretation: at a final pretrial conference in this Court, parties must have clients present with full settlement authority. In addition, at every Rule 16 conference with counsel, including the one held in this case, the Court specifically calls this provision to the attention of counsel and explains, as it did in this case, that failure to comply will result in entry of judgment without exception. Plaintiff did not contest the fact that this admonition was give to counsel at the Rule 16 conference in this case.

■ Even if there is any doubt as to the interpretation of this language, all parties to cases in the Eastern District of Michigan are charged with knowledge of the Local Court Rules. Local Rule 16.1(c) (emphasis added) states:

*[A]t all conferences designated as settlement conferences, all parties shall be present,* including, in the case of a party represented by an insurer, a claim representative *with authority adequate for responsible and effective participation in the conference.*

Local Rules 11.1(b) and (c) (underlining added) also provide:

**(b) Sanctions Affecting the Outcome of the Litigation (Civil Only).** *Abandonment, failure to prosecute, or failure to defend diligently may be found should counsel for any party or a party without counsel fail to appear before the Court at pretrial conference or should counsel or a party without counsel fail to complete the necessary preparation for pretrial or trial. Judgment may be entered against the defaulting party either with respect to a specific issue or on the entire case.* Alternatively, the failures of counsel or a party without counsel listed in this section may result in the imposition of sanctions authorized in (c) or (d). The Court shall direct that notice be given to the affected litigant of the sanction and the basis for its imposition.

**(c) Sanctions Affecting Counsel and Parties Represented by Counsel.** *If counsel for any party fails to comply with any of these Rules, or if any party represented by such counsel knowingly fails to comply with any of these rules, any Judge of this Court may, upon finding that such failure has obstructed the effective administration of the Court's business, assess costs directly against such counsel or party, have contempt proceedings initiated against such counsel or party or may order such other sanction or combination of sanctions as is appropriate to the circumstances of the case.*

The manifest intent of the Court's pretrial order and Local Rule 16.1 is to ensure that the Court be able to conduct meaningful, real settlement conferences not only with counsel, but, if necessary, with the clients themselves. The Court cannot, nor does it, force parties to settle. It can ensure, however, that a meaningful opportunity for settlement takes place by requiring all of the parties and their counsel to appear together at least once—at the final pretrial settlement conference.

Local Rule 16.1 and this Court's pretrial order are not imposed arbitrarily, capriciously or whimsically. There are important case management and public interest policies behind these requirements. The expense of litigation and, in particular, the costs of providing jury trials, has grown to staggering proportions, not only to the clients, but to our judicial system. In 1992, Federal District Courts all over the nation, including this District Court, had to suspend civil jury trials for several months because funds for these trials had been exhausted. It was only after Congress passed a supplemental appropriations bill that civil jury trials could resume.

Furthermore, efficient and fair docket management requires that those cases which can be settled have a fixed date at which settlement efforts are intensified and focused, so that the Court has some degree of predictability in determining which cases will ultimately go to trial and which may not. This is not only important to the Court in managing its docket; it is also important for the lawyers, clients and witnesses in the other cases before this Court to have some degree of predictability of dates. Without meaningful settlement negotiations, this predictability cannot be achieved.

The resources for federal dispute resolution are far from endless. In light of this reality, courts must have the ability to conduct meaningful settlement conferences. The only way that this Court knows how settle cases effectively, and thereby save the taxpayers significant money in Court time and jury expenses by settling those cases which can and should be settled, is to ensure that clients with full settlement authority are present at the final pretrial settlement conference. Too many times in its tenure has this Court, after arduous and lengthy settlement negotiations, had cases "settled" between the attorneys and those clients present, only to have them "vetoed" by clients back at the "home office." This is simply an intolerable waste of resources and, therefore, the Court insists that parties have someone present at the final pretrial conference who can make the final up or down judgment about a settlement offer.

The Court is aware that it is a favorite tactic of some attorneys—and companies—to intentionally not have the client representative with the ultimate authority present at the final pretrial conference so that counsel, and the client representative present, can effectively have a "buffer zone," or layer, of

deniability available to aid in tactical and strategic negotiating. Although this may well be an effective negotiating technique, it does not serve the public interests discussed above.

■ Returning to this case, the Court is absolutely persuaded that St. Paul and its counsel did not make a good faith effort to abide by the February 10, 1993 pretrial order and the policies recounted above that underlay it. Mr. Swan's "authority" at the settlement conference was little more than illusory.

Mr. Swan clearly did not have meaningful, or even adequate, authority to engage in responsible and effective settlement negotiations. He came to the final pretrial conference with the power to waive only $10,000 of St. Paul's principal claim, the approximately $1,000,000 owing on the workers compensation insurance policy. Despite St. Paul's protestations to the contrary, Mr. Swan's ability to waive the $70,000 owing on the second insurance policy was insignificant—both when compared quantitatively to St. Paul's principal claim and when one considers that St. Paul in all likelihood would be unable to hold the solvent Defendant Corporations liable for this claim. Also insignificant in terms of quality as well as quantity when compared to the principal $1,000,000 claim was the $100,000 plus that Mr. Pijls stated St. Paul would receive in interest on the workers compensation premiums. Prior to the hearing and conference, St. Paul had no way of knowing that its interest demand was of any real value because the underlying liability on the workers compensation policy was still an open question. Furthermore, with respect to the future adjustments to St. Paul's workers compensation premiums, at the time of the conference, their extent was completely speculative in nature. They may add up to $500,-000; they may add up to $5, or to absolutely nothing.

Plaintiff has vigorously asserted that when one adds up the authority Mr. Swan brought with him to the hearing and final pretrial conference, St. Paul came to the table with $680,000 in real money to "compromise." Despite these contentions, upon careful review of the actual power Mr. Swan had, $670,000 of the claimed $680,000 within his authority was either speculative or legally tenuous at the time the hearing and conference commenced. Mr. Swan came to the conference, then, with only $10,000 in real settlement authority.

This is not, in the opinion of the Court, a good faith attempt to comply with an explicit Local Court Rule and a court order requiring a client with authority to settle the case to be present at the final pretrial conference. Prior to the hearing on its summary judgment motion, St. Paul and its counsel had no way of knowing the settlement value of its claims. Suppose the Court had denied summary judgment to Plaintiff? The estimated settlement value of the case to St. Paul would have decreased significantly, and Mr. Swan's authority over future claims and interest would have given him power over absolutely nothing of real value to Defendants. Suppose the Court, through its consultations with counsel for Defendants and Third Party Defendants, had been able to get $750,000 or even $950,-000 on the table for St. Paul? Mr. Swan would have been unable to accept it because he could not waive anything beyond a mere $10,000 of St. Paul's $1,000,000 workers compensation claim. It is precisely this kind of stonewalling by counsel and parties that Local Rule 16.1 and the Court's pretrial order are designed to thwart.[1]

After hearing the testimony at the show cause hearing, the Court is further convinced that St. Paul and its counsel made a deliberate attempt to circumvent the requirements of Local Rule 16.1 and the Court's pretrial order. Pursuant to its show cause hearing, the Court ordered St. Paul's counsel to produce the correspondence it sent to St. Paul regarding attendance of a client representative at the final pretrial conference. In a letter dated August 20, 1993, addressed to Mr. Swan and circulated to C.F. Branton, a St. Paul executive with, according to Plaintiff at the October 22, 1993 hearing, unlimited

---

1. Permitting such tactics to go unpunished would be particularly unfair to Defendants and Third Party Defendants, as all of them were present with authority. Indeed, several had flown in from various parts of the country to attend the hearing and settlement conference.

settlement authority, Mr. Pijls stated (emphasis in first paragraph in original; added in second paragraph):

> It is imperative that a St. Paul representative with authority to settle be present at this final Pre-trial Conference on September 30 at 3:00 p.m. at the Federal Courthouse in downtown Detroit.
>
> I would kindly ask that you [Mr. Swan] make the arrangements for an appropriate person to be present at that time.

This letter indicates to the Court that St. Paul and its counsel knew exactly what they were doing by sending Mr. Swan to the final pretrial conference instead of someone with meaningful, not illusory, settlement authority. Mr. Pijls carefully alerted St. Paul in writing that someone with settlement authority was required at the conference. According to Mr. Pijls' oral argument on October 22, 1993, he, Mr. Swan and Mr. Branton also discussed by telephone at least three times who was to attend the final pretrial conference. These facts indicate to the Court that St. Paul and its counsel were aware that the Court ordered that someone with meaningful settlement authority be present at the final pretrial conference. The evidence further suggests to this Court, that sending Mr. Swan with virtually meaningless authority was a calculated move by St. Paul to avoid realistic settlement negotiations.[2]

The strategy behind St. Paul's decision is not hard to discern. Sending a local claims agent instead of a home office executive would permit it the time it wanted to reflect on the Court's summary judgment rulings, and to carefully calculate its next move should the Defendants be unable to put the money on the table that Mr. Swan was able to accept. Mr. Pijls' represented in oral argument on October 22, 1993, that as of that date, St. Paul had not done any discovery on the collectability of the Defendants.[3] St. Paul, therefore, had further reason to want to extend the time it would have in this case in order to better determine what it could get from Defendants. Moreover, by sending someone without real settlement authority, St. Paul could insulate itself from any pressure the Court might bring to bear to reach a settlement, while it could benefit from any pressure the Court was able to place on other parties with clients present.

The Court, therefore, holds that St. Paul and its counsel, Hans Pijls of Plunkett & Cooney, P.C., have violated its pretrial order with the intent to frustrate meaningful settlement negotiations. Given its broad discretion under Fed.R.Civ.P. 16 and Local Court Rule 11.1 to impose sanctions for breaches of court orders, and the explicit sanction of entry of judgment against the breaching party spelled out in the pretrial order,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff, St. Paul Fire & Marine Insurance Company, shall be entitled to receive only fifty percent (50%) of any principal judgment it ultimately receives, and that no interest shall be awarded or accrued on that judgment.

IT IS FURTHER ORDERED that St. Paul's counsel, Plunkett & Cooney, P.C., shall pay to the Court $5,000.00 (Five Thousand Dollars) as a sanction for its participation in the intentional violation of Local Rule 16.1 and this Court's pretrial order.

---

**2.** The Court moreover adds that St. Paul is the Plaintiff in this case with, allegedly, $1.7 million at issue. St. Paul thus chose the forum to bring this action—the Eastern District of Michigan. If this case was important enough to St. Paul to pursue in this Court, it should have been important enough to have Mr. Branton here, just as it was important enough to the Defendants and Third Party Defendants for them to be here personally at their own expense.

**3.** Plaintiff argues that one of the reasons it did not have a client representative with full settlement authority at the final pretrial settlement conference was that at the time of the conference it had not, and could not under the Federal Rules, compel discovery of the Defendant Corporations' collectability prior to receiving a judgment of liability. Even assuming, arguendo, that this is a correct statement of the law, the Court does not believe that such a reading of the Federal Rules in any way negates the clear dictates of Fed.R.Civ.P. 16, Local Rule 16.1 and the Court's pretrial order. The fact that collectability is uncertain may indeed affect settlement negotiations, but the Court fails to see why it has any bearing on whether counsel and clients with full settlement authority should be required to come to final pretrial conferences.